UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYGRIS ASSET FINANCE, INC., ) <br> a Delaware corporation, successor to ) <br> Marcap Corp., ) <br> ) <br>             Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> ROSEMARY SZOLLAS and ) <br> CYNTHIA BARSA, ) <br> ) <br>             Defendants. ) | Case No. 09 C 4488 <br><br> Judge Joan B. Gottschall |
| ROSEMARY SZOLLAS, ) <br> ) <br>             Cross-Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> CYNTHIA BARSA, and OASIS CENTER ) <br> FOR WELLNESS AND BEAUTY, LLC, ) <br> a Florida limited liability corporation, ) <br> ) <br>             Cross-Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tygris Asset Finance, Inc. ("Tygris") brought this action against Defendants Rosemary Szollas and Cynthia Barsa to recover damages for breach of a lease agreement. (Compl., Doc. No. 1.) Szollas, in turn, filed claims against Cross-Defendant Barsa and Third-Party Defendant Oasis Center for Wellness and Beauty, LLC ("Oasis"), seeking indemnification for any judgment entered against Szollas in favor of Tygris, and a declaration of non-liability under the lease agreement. (Answer to Compl., Affirmative Defenses, and Crosscl., Doc. No. 21.) This matter comes before the

court on Szollas' "motion for default and default judgment" against Barsa and Oasis. (Doc. No. 29.) For the reasons set forth below, Szollas' motion is granted in part and denied in part.

## I. BACKGROUND

According to the complaint, Oasis entered into an agreement to lease a "Cynosure Apogee Elite Laser System and Tri-Active System" from Tygris. (Compl. ¶ 7.) Barsa and Szollas allegedly signed the lease as Oasis' guarantors, "unconditionally, jointly and severally, guarantee[ing] the prompt payment . . . of Oasis to Tygris." (*Id*. ¶¶ 16-17; *see also* Lease Agreement, Ex. 1 to Compl., Doc. No. 20.) Tygris delivered the laser to Oasis, but Oasis allegedly failed to make the monthly payments required under the lease. (Compl. ¶¶ 8-10.) When Oasis ignored Tygris' demand for payment, Tygris filed suit against Szollas and Barsa pursuant to the guaranty. (*Id.*)

Szollas filed a cross-claim against Barsa and a third-party complaint against Oasis, seeking indemnification for any judgment entered against Szollas in favor of Tygris, and a declaration of non-liability under the guaranty. (Answer to Compl. and Affirmative Defenses, Crosscl.) Summonses were served on Barsa and Oasis, and returned executed on October 1, 2009. (Summonses, Doc. Nos. 27 and 28.) Under Federal Rule of Civil Procedure 12(a)(1)(B), Barsa and Oasis were required to respond to Szollas' cross-claim and third-party complaint on or before October 21, 2009, but failed to do so. (Supplement to Mot. ¶ 3, Doc. No. 38.)

On November 9, 2009, attorney Philip A. Creed entered an appearance on behalf of Barsa. (Appearance, Doc. No. 31.) Szollas filed the instant motion for entry of default and default judgment two days later. (Mot.) The court subsequently granted Barsa's oral

motion for leave to file an answer to Szollas' cross-claim, and Barsa filed her answer to the cross-claim on December 16, 2009. (Minute Entry, Nov. 19, 2009, Doc. No. 32; Answer to Cross-cl., Doc. No. 33.) Oasis has yet to enter an appearance or respond to Szollas' third-party complaint.

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 55 governs default judgments in federal court." *Silberman v. Wigod*, 914 F.2d 260 (Table), 1990 WL 127568, at *4 (7th Cir. 1990); *see* Fed. R. Civ. P. 55. It is important to note that Rule 55 "draws a distinction between an entry of a default, [in] Rule 55(a), and the entry of judgment by default, [in] Rule 55(b)." *Thacker v. Menard, Inc.*, 86 F.3d 1158 (Table), 1996 WL 267456, at *1 (7th Cir. 1996).

Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The entry of a default "is merely a formal matter and does not constitute entry of a judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (3d ed. 2010); *see also U.S. v. Hansen*, 795 F.2d 35, 36 (7th Cir. 1986) ("[A]n order of default is not a final judgment, though a default judgment is. . . . .[A] default order [is] an intermediate, ministerial, nonjudicial, virtually meaningless docket entry . . . ."). "Although Rule 55(a) . . . refers to entry of default by the clerk, it is well-established that a default also may be entered by the court." *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982). When motion is made to the court for entry of a default, "the decision to enter default lies within the district court's discretion." *Arnold v. Boatmen's Nat'l Bank of Belleville*, 89 F.3d 838 (Table),

3

1996 WL 359778, at *2 (7th Cir. 1996); *O'Brien v. R.J. O'Brien & Assoc's, Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993).

Under Rule 55(b)(2), "the court may enter a default judgment if the amount at issue is for a sum certain." *Am. Nat'l Bank & Trust Co. of Chi. v. Alps Elec. Co.*, No. 99 C 6990, 2002 WL 484845, at *1 (N.D. Ill. Mar. 29, 2002) (citing Fed. R. Civ. P. 55(b)(2)). "A party is not entitled to a default judgment as a matter of right." *Jordan v. Van Dyke*, No. 99 C 5357, 2000 WL 126784, at *2 (N.D. Ill. Feb. 1, 2000). Rather, "[t]he decision to enter a default judgment lies within the discretion of the district court." *Am. Nat'l Bank & Trust*, 2002 WL 484845, at *1. The court can "decline[] to enter a default judgment . . . even if it may be technically justified." *Jordan*, 2000 WL 126784, at *2. In determining whether to enter a default judgment, courts consider "[t]he amount of money potentially involved, the presence or absence of disputed factual issues or issues of public importance, whether the default was largely technical, whether the plaintiff was substantially prejudiced by the delay, and whether the grounds for default are clearly established . . . ." *Am. Nat'l Bank & Trust*, 2002 WL 484845, at *1.

"It would be an inefficient use of the parties' and this court's time and resources to grant Plaintiff's motion for a default judgment knowing that such judgment would be promptly set aside pursuant to Rule 55(c) [or Rule 60(b)]." *Macri v. Yamauchi*, No. 01 C 50168, 2002 WL 390223, at *4 (N.D. Ill. Mar. 11, 2002). As a result, courts often consider Rules 55(c) and 60(b) in determining whether to enter a default or default judgment. *See id.* Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b), in turn, provides that "[o]n motion and just terms, the court may

4

relieve a party . . . from a final judgment . . . for," among other reasons, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Courts have recognized that "'good cause' [under Rule 55(c)] is not sharply distinguishable from 'excusable neglect' [under Rule 60(b),] if it is distinguishable at all."[1] *Conn. Nat'l Mortgage Co. v. Brandstatter*, 897 F.2d 883, 885 (7th Cir. 1990). A party seeking to vacate an entry of default or default judgment must show: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 630 (7th Cir. 2009); *see also Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). "While the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test 'is more liberally applied in the Rule 55(c) context,'" which is to say before judgment has actually been entered. *Cracco*, 559 F.3d at 631 (quoting *U.S. v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989)). This is consistent with the Seventh Circuit's "policy of favoring trial on the merits over default judgment." *Cracco*, 559 F.3d at 631.

III.  ANALYSIS

A.  **Entry of Default and Default Judgment Against Barsa**

Szollas argues that Barsa's "reasons for failing to timely respond to the Cross-Claim do not rise to excusable neglect . . . ." (Reply at 2, Doc. No. 41.) Barsa argues that her tardiness should be excused because "[a] hip fracture, my father's [medical] condition, the separation from [my] husband, [my] cancer diagnosis and the difficulty in

---

[1] "The determination of excusable neglect is 'an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Fields v. Booker*, 283 Fed. Appx. 400, 402 (7th Cir. 2008) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. P'ship*, 507 U.S. 380, 395 (1993)). The Supreme Court identified several factors relevant to whether a party's neglect of a deadline is excusable: "[T]he danger of prejudice, the length of the delay and its potential impact on judicial proceedings, the reasons for delay, including whether it was within reasonable control of the movant, and whether the movant acted in good faith." *Comerica Bank v. Esposito*, 215 Fed. Appx. 506, 508 (7th Cir. 2007) (quoting *Pioneer Inv. Servs.*, 507 U.S. at 395).

5

finding a Chicago attorney [from Barsa's home in Florida] all contributed to my delay in responding to the Summons and Complaint in this case." (Resp. at 2, Doc. No. 40; Barsa Aff. ¶ 16, Doc. No. 35-1.) Although the court does not entirely agree with Barsa's position, the court nonetheless declines to enter a default or default judgment against Barsa.

As a threshold matter, Barsa's personal health and family issues do not provide her with a valid excuse for failing to file a timely answer to Szolla's cross-claim. Courts in this district have consistently held that a litigant's "personal circumstances," including health problems and/or family issues, do not constitute "good cause" or "excusable neglect" for failing to file a responsive pleading. *See Middleton v. N. Shore Movers, Inc.*, No. 03 C 4246, 2004 WL 783157, at *3 (N.D. Ill. Jan. 13, 2004) (holding that plaintiff's illness not good cause to vacate default judgment); *Medline Indus., Inc. v. Medline Rx Fin., LLC*, 218 F.R.D. 170, 173 (N.D. Ill. 2003) (same); *U.S. v. 225 Standish St., Elgin, Ill.*, No. 91 C 8228, 1992 WL 122815, at *2 (N.D. Ill. May 26, 1992) (same), *aff'd*, 993 F.2d 1550 (7th Cir. 1993); *Silberman v. Wigod*, No. 85 C 9090, 1988 WL 1053505, at *2 (N.D. Ill. Oct. 5, 1988) (same), *aff'd*, 914 F.3d 260 (7th Cir. 1990). "When unpredictable and unfortunate circumstances arise . . . [a litigant] should inform the court before the filing deadline passes why he will be unable to comply, and if that is not possible, should inform the court as soon as practicably possible why the filing was late." *Medline Indus.*, 218 F.R.D. at 173. If Barsa believed that her personal and family problems were going to prevent her from answering the cross-claim in time, she should have contacted the court or opposing counsel to seek an extension. Yet Szollas maintains—and Barsa does not deny—that "[a]t no time prior to the November 18, 2009 hearing on the Default Motion

did Ms. Barsa or her counsel of record contact Dr. Szollas or request additional time to answer or otherwise plead."[2] (Mot. ¶ 6.)

Barsa's alleged inability to find an Illinois attorney from her place of residence in Florida is similarly unavailing. Barsa cites no authority for the proposition that an out-of-state litigant should be excused from filing a timely responsive pleading because of his or her failure to locate an attorney where the suit is pending. (*See* Resp.) Caselaw in this district is clearly to the contrary, holding that a foreign defendant's difficulty obtaining local representation does not constitute "good cause" to vacate (or refrain from entering) a default judgment. *See Inquote Corp. v. Cole*, No. 99 C 6232, 2002 WL 483417, at *2 (N.D. Ill. Mar. 29, 2002) (holding that out-of-state litigant's difficulty obtaining counsel does not constitute good cause to set aside default); *Khetarpal v. Malini*, No. 99 C 6896, 2002 WL 206004, at *2 (N.D. Ill. Feb. 7, 2002) (same). Again, Barsa could easily have contacted the court or opposing counsel to seek an extension but did not.

Nonetheless, the court declines to enter a default or default judgment against Barsa for two reasons. First, the delay resulting from Barsa's failure to file a timely answer is not particularly significant. *See Mommaerts v. Hartford Life Ins. and Accident Ins. Co.*, 472 F.3d 967, 968 (7th Cir. 2007) (holding that failure to file timely answer was excused where "delay was short"); *Jordan*, 2000 WL 126784, at *2 (same). Barsa filed her answer less than two months after the deadline had passed. (*See* Answer to Cross-cl.) Szollas does not claim, nor could she, that her ability to litigate the case will be

---

[2] Although a litigant's personal circumstances will rarely qualify as excusable neglect, "a family emergency constitutes good cause for . . . absence on the date of the default." *Rank DMS, LLC v. Direct Disk Network, Inc.*, No. 06 C 1666, 2008 WL 4347736, at *4 (N.D. Ill. Mar. 19, 2008). Barsa blames her failure to file a timely answer in part on her father's medical condition. (*See* Barsa Aff. ¶ 16.) But the facts set forth in Barsa's affidavit indicate that she returned from visiting her ailing father in July of 2009, several months before Szollas' cross-claim was filed. (*See id.* ¶¶ 3-5.) Barsa's father's illness does not therefore provide Barsa with "good cause" for her lateness in filing an answer.

prejudiced by this relatively brief delay. (*See* Mot., Reply.) Second, Barsa has demonstrated that she has a "meritorious defense" to liability. (*See* Resp.) "A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *Jones*, 39 F.3d at 165. Szollas claims that she is entitled to a declaration of non-liability because Szollas "signed the Equipment Lease and guaranty solely in her capacity as an employee of Oasis Center and for the limited purpose of registering as the licensed physician." (Answer and Cross-Cl. ¶ 7.) Barsa contests these allegations on their merits, arguing that "the lease and guaranty do not exhibit any representative capacity." (Resp. at 2.) A copy of the lease, appended to Tygris' complaint as an exhibit, appears to support Barsa's position. (*See* Lease Agreement.) Szollas further claims that she is entitled to indemnification because Barsa duped her into personally guaranteeing Oasis' performance, when Szollas intended to sign the lease only in her "capacity as an employee." (*See* Answer to Compl., Affirmative Defenses and CrossCl. ¶ 7.) Barsa disputes this too, alleging that "Szollas was to become a member of Oasis Center and it was for that reason that she signed the lease and guaranty." (Resp. at 3.) In light of the relatively brief delay occasioned by Barsa's technical default, her meritorious defenses, and the Seventh Circuit's "policy of favoring trial on the merits over default judgment," *Cracco*, 559 F.3d at 630-31, the court denies Szollas' motion for entry of a default or default judgment against Barsa.[3]

---

[3] Szollas suggests that the court should not have granted Barsa's motion for leave to file her answer late because "[a]t no time during that hearing [when Barsa was given leave to file an answer] did counsel for Ms. Barsa provide any . . . reason for Ms. Barsa's failure to timely meet the Answer deadline." (Supplement to Mot. at 2.) "A district court does not abuse its discretion in granting a party an enlargement

**B.     Award of Attorneys Fees Against Barsa**

Szollas argues that she "will be unduly prejudiced if Ms. Barsa is permitted to answer the Cross-Claim without reimbursing Dr. Szollas for the attorneys' fees and costs associated with filing and presenting the Default Motion . . . ." (Reply at 3.) Barsa counters by arguing that there is no statutory authority for the attorney's fees sought by Szollas, and "Szollas has not and cannot allege that Barsa has acted in bad faith or engaged in conduct intended to delay or harass Szollas." (Resp. at 4.) The court disagrees with both parties' positions, but will not hold Barsa liable for the costs and attorney's fees incurred by Szollas in moving for a default judgment.

In deciding a motion to vacate a default, "the court has broad discretion to impose certain terms or conditions on the defaulting party to remedy prejudice or expense that the nondefaulting party suffered as a result." *Mellon Stuart Co. v. Rizzi's Year-Round Outdoor Maintenance, Inc.,* No. 87 C 8087, 1998 WL 76966, at *2 (N.D. Ill. July 19, 1988). It is "not unusual" for courts in this district to require the defaulting party to "reimburse[e] plaintiffs and their counsel for the reasonable attorneys' fees and expenses that they have incurred in connection with the . . . motion for default . . . ." *Davis v. Coopers & Lybrand*, No. 90 C 7173, 1991 WL 172953, at *2 (N.D. Ill. Aug. 29, 1991) (setting aside default judgment, but granting non-defaulting party's motion for attorney's fees); *see also Flexicorps, Inc. v. Beck*, No. 02 C 8167, 2003 WL 223441, at *2 (N.D. Ill. Jan. 31, 2003) (same); *Mellon Stuart*, 1998 WL 76966, at *2 (same). Where a plaintiff's conduct "in pursuing that matter to [default] judgment was entirely reasonable and was occasioned by the . . . negligence on the defense side of the dispute, it would not be fair

---

of time to file a pleading if the party demonstrates 'excusable neglect' for its delay." *Arnold*, 89 F.3d 838 (table), 1996 WL 359778, at *2. To the extent the court did not expressly address the issue of excusable neglect at the November 19, 2009 hearing, the court does so now and finds that the standard has been met.

to burden [the plaintiff] with having to swallow the expense of its legitimate effort." *Flexicorps*, 2003 WL 223441, at *2. This reasoning applies with equal force to situations where a defendant fails to file a responsive pleading but appears just in time to oppose the plaintiff's motion for default judgment. *See Allen Russel Publ'g, Inc. v. Levy*, 109 F.R.D., 315, 321 (N.D. Ill. 1985) (awarding costs and attorney's fees associated with bringing justified but unsuccessful motion for default judgment).

The court is not convinced that Szollas was "entirely reasonable" in filing the instant motion for default judgment. *See Flexicorps*, 2003 WL 223441, at *2. Although Barsa was late in responding to Szollas' cross-claim, Barsa's attorney nonetheless entered an appearance prior to the filing of Szollas' motion for default. (*See* Appearance; Mot.) The appearance was a clear indication of Barsa's desire to participate in the lawsuit, tardy though it may have been. In light of the Seventh Circuit's "policy of favoring trial on the merits over default judgment," *Cracco*, 559 F.3d at 631, and the lack of delay or prejudice caused by Barsa's conduct, Szollas should have known that her motion for default judgment was unlikely to succeed. Yet Szollas not only persisted in seeking the entry of a default judgment, she filed two additional briefs in support of her position even after Barsa filed an answer to the cross-claim. (*See* Supplement to Mot; Reply.) The court will not require Barsa to pay the costs and attorneys' fees associated with Szollas' excessively zealous effort to obtain a default judgment.[4]

---

[4] The only case cited by Szollas in support of her position, *Mellon Stuart Co. v. Rizzi's Year-Round Outdoor Maintenance, Inc.,* 1998 WL 76966, is easily distinguishable since the defaulting party in *Mellon Stuart* had not entered an appearance or otherwise attempted defend the case before the motion for default was filed. (*See* Reply at 2 n.3.)

### C. Entry of Default and Default Judgment Against Oasis

Szollas has adequately demonstrated, and the docket confirms, that Oasis has failed to appear or file a timely answer to Szollas' third-party complaint. (*See* Mot.) "Even when a default judgment is warranted based on a party's failure to defend," however, "the allegations in the complaint with respect to the amount of the damages are not deemed true." *In re Catt*, 368 F.3d 789, 792 (7th Cir. 2004) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir. 1999)). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* It is therefore incumbent upon the court to determine whether the relief Szollas requests can be provided in a default judgment.

Szollas seeks a judgment against Oasis, "declaring that Dr. Szollas is not personally liable under the guaranty," and "rescinding the guaranty as to Dr. Szollas." (Mot. at 6.) It is well-settled that the court has authority to enter declaratory default judgments as well as default judgments for monetary damages. *See Owners Ins. Co. v. Complete Mech. Servs., Inc.*, No. 08 C 4201, 2008 WL 4821654, at *1-2 (N.D. Ill. Oct. 31, 2008) (entering default declaratory judgment of non-liability). The court will therefore enter a default judgment declaring the guaranty invalid as between Oasis and Szollas. Oasis is hereby precluded from claiming any kind of contribution or indemnification from Szollas under the guaranty. This will not, of course, prevent Tygris from enforcing the guaranty against Szollas. *See Principal Mut. Life Ins. Co. v. Eady*, 889 F. Supp. 1067, 1072 (N.D. Ill. 1995) (holding that admissions in default judgment could not be enforced by non-defaulting second party against non-defaulting third party in same litigation).

Szollas also seeks an order "directing Oasis Center . . . to pay any judgment entered in favor of Tygris." (Mot. at 6.) This request is ambiguous. To the extent Szollas seeks a declaratory judgment holding Oasis liable for any amounts Szollas is forced to pay Tygris, the motion is granted. *See Owners Ins.*, 2008 WL 4821654, at *1-2. To the extent Szollas seeks a money judgment against Oasis, or an order directing Oasis to reimburse Szollas for any judgment entered against her, the motion is denied. Since no judgment has yet been entered against Szollas, it is impossible for the court to "ascertain the amount of damages with reasonable certainty." *See Peterson v. Olson*, No. 05 CV 3475, 2006 WL 1215385, at *3-4 (N.D. Ill. May 2, 2006) (holding that non-defaulting party not entitled to "speculative" damages). Szollas is free, however, to move for entry of a default money judgment once her liability to Tygris (if any) has been assessed.[5]

### IV. CONCLUSION

Szollas' motion for default and default judgment against cross-defendant Barsa and third-party defendant Oasis [Doc. No. 29] is granted in part and denied in part.


ENTER: /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 7, 2010

---

[5] "[A] default judgment is not appropriate if it would result in inconsistency among judgments with multiple defendants. . . . However, when different results as to different parties are not logically contradictory or inconsistent, such as in the case of joint and several liability, default judgment against a non-answering defendant is appropriate." *Sack v. Seid*, No. 01 C 6747, 2002 WL 31409573, at *1 (N.D. Ill. Oct. 24, 2002) (citing *Marshall & Isely Trust Co. v. Pate*, 819 F.2d 806, 811 (7th Cir. 1987); *In re Unranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980)). Since Oasis and Barsa appear to be jointly and severally liable under the lease and guaranty, the court finds that no inconsistency will result from entering a default judgment against Oasis but not Barsa. (*See* Compl. ¶¶ 16-17; Lease.)