UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYGRIS ASSET FINANCE, INC., ) <br> a Delaware corporation, successor to ) <br> Marcap Corp., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROSEMARY SZOLLAS and ) <br> CYNTHIA BARSA, ) <br> ) <br> Defendants. ) | Case No. 09 C 4488 <br><br> Judge Joan B. Gottschall |
| ROSEMARY SZOLLAS, ) <br> ) <br> Cross-Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CYNTHIA BARSA, and OASIS CENTER ) <br> FOR WELLNESS AND BEAUTY, LLC, ) <br> a Florida limited liability corporation, ) <br> ) <br> Cross-Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tygris Asset Finance, Inc. ("Tygris") brought this action against Defendant Cynthia Barsa to recover damages for the alleged breach of a lease agreement. (Compl., Doc. No. 1.) This matter comes before the court on Barsa's motion to vacate the default judgment entered against her by the court. (Mot. to Vacate Default J., Doc. No. 35.) For the reasons set forth below, Barsa's motion is denied.

## I. BACKGROUND

According to the complaint, Oasis Center for Wellness and Beauty, LLC ("Oasis") entered into an agreement to lease a "Cynosure Apogee Elite Laser System and Tri-Active System" (the "laser") from Tygris. (Compl. ¶ 7.) Barsa allegedly signed the lease as Oasis' guarantor, "unconditionally, jointly and severally, guarantee[ing] the prompt payment . . . of Oasis to Tygris." (*Id.* ¶¶ 16-17.) Oasis eventually defaulted under the lease by failing to make the required monthly payments. (*Id.* ¶ 10.) When Oasis ignored Tygris' demand for payment, Tygris filed suit against Barsa pursuant to the guaranty. (*Id.* ¶ 13.)

Barsa was served with a summons and copy of the complaint on August 26, 2009 (Summons, Doc. No. 15), which gave her until September 15, 2009 to file a responsive pleading or motion. *See* Fed. R. Civ. P. 12(a)(1)(B). Barsa failed to file an answer by the deadline, and a week later Tygris filed a motion for entry of a default judgment against Barsa for $121,325.44, the amount allegedly due and owing under the lease, plus interest, costs, and attorney's fees. (Pl.'s Mot. for Default and Default J. Against D. Barsa, Doc. No. 16.) According to the certificate of service, a copy of the notice of motion was served on Barsa at her home in Florida. (*See* Notice of Mot. – Mot. for Default/Default J., Doc. No. 17.) Barsa failed to appear or contest the motion, and on September 30, 2009, the court entered a default judgment against Barsa and in favor of Tygris in the requested amount of $121,325.44. (*See* Minute Entry, Doc. No. 24; Order on Pl.'s Mot. for Default and Default J. Against Def. Barsa, Doc. No. 25; Entered J., Doc. No. 26.)

More than six weeks after the default judgment was entered, attorney Philip A. Creed filed an appearance on behalf of Barsa. (Appearance, Doc. No. 31.) Two months

later, Barsa, through her attorney, filed the instant motion to vacate the default judgment. (Mot.) Tygris opposes Barsa's motion, but asks the court to reduce the default judgment by $21,500 to reflect the proceeds that Tygris obtained from selling the laser in an attempt to mitigate its damages.[1] (*See* Resp. at 2, Doc. No. 39.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that "[t]he court . . . may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b), in turn, provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment . . . for," among other reasons, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "The Supreme Court has adopted a 'flexible understanding' of excusable neglect . . . that encompasses 'all relevant circumstances surrounding the party's omission.'" *Casio Computer Co. v. Noren*, 35 Fed. Appx. 247, 250 (7th Cir. 2002) (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc's Ltd. P'Ship*, 507 U.S. 380, 389 (1993)). Factors include "the reason for the default, whether it was within the movant's control, the danger of prejudice to the non-movant, and the interests of judicial administration." *Id*. However, "'[i]nadvertence, ignorance of the rules, or mistakes concerning the rules' are not ordinary recognized as forms of excusable neglect, . . . and negligent handling of a case, by itself, will not excuse untimely behavior or satisfy the showing required by Rule 60(b)." *Id.* (quoting *Pioneer Inv. Servs.*, 507 U.S. at 391-92).

The Seventh Circuit has made it clear that setting aside a default judgment is "an extraordinary remedy to be granted in exceptional circumstances." *Id.* "Rule 60(b)(1) . . .

---

[1] Tygris claims, and Barsa does not dispute, that it sold the laser after entry of the default judgment. (*See* Resp. at 2; Reply, Doc. No. 42.)

establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment." *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994). In order to set aside a default judgment, "a specialized three-part standard has evolved which squarely places the burden on the moving party to show: (1) 'good cause' for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint." *Id.*

### III. ANALYSIS

#### A. Good Cause

Barsa argues that her failure to file a timely answer should be excused because "[a] hip fracture, my father's [medical] condition, the separation from [my] husband, [my] cancer diagnosis and the difficulty in finding a Chicago attorney [from Barsa's home in Florida] all contributed to my delay in responding to the Summons and Complaint in this case." (Barsa Aff. ¶ 16, Doc. No. 35-1.) Tygris argues that "Barsa's tale of why she did not appear in this case when served with the Complaint . . . falls short of what is required to show 'excusable neglect.'" (Resp. at 3-4.) The court agrees with Tygris.

Barsa's personal health and family issues do not provide her with a valid excuse for failing to file a timely answer to Tygris' complaint. Courts in this district have consistently held that a litigant's "personal circumstances," including health problems and/or family issues, do not constitute "good cause" or "excusable neglect" for failing to file a responsive pleading. *See Middleton v. N. Shore Movers, Inc.*, No. 03 C 4246, 2004 WL 783157, at *3 (N.D. Ill. Jan. 13, 2004) (holding that plaintiff's illness not good cause

4

to vacate default judgment); *Medline Indus., Inc. v. Medline Rx Fin., LLC*, 218 F.R.D. 170, 173 (N.D. Ill. 2003) (same); *U.S. v. 225 Standish St., Elgin, Ill.*, No. 91 C 8228, 1992 WL 122815, at *2 (N.D. Ill. May 26, 1992) (same), *aff'd*, 993 F.2d 1550 (7th Cir. 1993); *Silberman v. Wigod*, No. 85 C 9090, 1988 WL 1053505, at *2 (N.D. Ill. Oct. 5, 1988) (same), *aff'd*, 914 F.3d 260 (7th Cir. 1990). "When unpredictable and unfortunate circumstances arise . . . [a litigant] should inform the court before the filing deadline passes why he will be unable to comply, and if that is not possible, should inform the court as soon as practicably possible why the filing was late." *Medline Indus.*, 218 F.R.D. at 173. If Barsa believed that her personal and family problems were going to prevent her from answering the complaint in time, she should have contacted the court or opposing counsel to seek an extension.[2] Barsa's failure to do so indicates that "the defaulting party has willfully chosen not to conduct its litigation with the degree of diligence and expediency prescribed by the trial court . . . ." *Jones*, 39 F.3d at 164 (quoting *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984)).

Barsa's alleged inability to find an Illinois attorney from her place of residence in Florida is similarly unavailing. Barsa cites no authority for the proposition that an out-of-state litigant should be excused from filing a timely responsive pleading because of his or her failure to locate an attorney where the suit is pending. (*See* Mem, Doc. No. 36.) Caselaw in this district is clearly to the contrary, holding that a foreign defendant's

---

[2] Barsa blames her lateness in part on her father's "condition." (Barsa Aff. ¶ 16.) Although "a family emergency constitutes good cause for . . . absence on the date of the default," *Rank DMS, LLC v. Direct Disk Network, Inc.*, No. 06 C 1666, 2008 WL 4347736, at *4 (N.D. Ill. Mar. 19, 2008), Barsa cannot avail herself of this exception. Barsa admits that she only stayed with her father "for over a week," before her answer was due, hardly explaining the four and a half month delay between service of the complaint and the motion to set aside the default. (Mem. at 2-3.)

difficulty obtaining local representation does not constitute "good cause" to vacate a default judgment. *See Inquote Corp. v. Cole*, No. 99 C 6232, 2002 WL 483417, at *2 (N.D. Ill. Mar. 29, 2002) (holding that out-of-state litigant's difficulty obtaining counsel does not constitute good cause to set aside default); *Khetarpal v. Malini*, No. 99 C 6896, 2002 WL 206004, at *2 (N.D. Ill. Feb. 7, 2002) (same). Again, Barsa could easily have contacted the court or opposing counsel to seek an extension but neglected to do so. Barsa has therefore not demonstrated "good cause" for her failure to timely respond to Tygris' complaint.[3]

**B.    Quick Action**

Tygris argues that "Barsa's excusable neglect defense does not excuse her waiting for over three months after the default judgment was entered to file a motion to vacate, and it definitely does not explain why an attorney appeared for her in November 2009 and a motion to vacate was not filed until 60 days later." (Resp. at 5.) Barsa counters by arguing that "the motion to vacate has been filed within a reasonable time," considering

---

[3]     Barsa's co-defendant, Szollas, is also alleged to have signed the guaranty in favor of Tygris. (Compl. ¶¶ 16-17.) When Tygris filed suit against Barsa, it also filed suit against Szollas, who in turn filed a cross-claim against Barsa. (Answer to Compl., Affirmative Defenses, and Crosscl., Doc. No. 21.) Barsa failed to timely respond to Szollas' cross-claim, but entered an appearance a few weeks after the deadline and obtained leave to filed an answer. (Appearance; Minute Entry, Nov. 19, 2009, Doc. No. 32.) Szollas nonetheless filed a motion for default judgment, and Barsa filed an opposition brief setting forth substantially the same arguments that Barsa makes here. (Mot. for Default and Default J., Doc. No. 29; Resp. to Mot. for Entry of Default and Default Judgment, Doc. No. 40.) The court ruled in favor of Barsa, holding that Barsa failed to demonstrate "good cause" for her tardiness, but denying Szollas' motion on the grounds that a default judgment had yet to be entered, and the delay occasioned by Barsa's tardiness was minimal. (Mem. and Order, June 4, 2009, Doc. No. 52.) The court reaches a different result with respect to motion *sub judice* because a default judgment was entered against Barsa, and stood for more than three months without being challenged. (*Compare* Order on Pl.'s Mot. for Default and Default J. Against Def. Barsa *with* Mot.) It is well-settled that "respect for the finality of judgments results in the application of the tests under Rule 60(b) circumstances-where a default *judgment* has been entered-to be much more limited and stringent [than when there has been a mere *entry* of default]." *Jones*, 39 F.3d at 162. Though the Seventh Circuit may have a "policy of favoring trial on the merits over default judgment," *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009), that policy applies only when the defaulting party has appeared before the entry of a default judgment. Once a default judgment has been entered, setting it aside is considered "an extraordinary remedy to be granted in exceptional circumstances." *Casio Computer Co.*, 35 Fed. Appx. at 250. As set forth above, no such "exceptional circumstances" exist here that would justify an exception to the rule.

her and her father's health problems and her alleged difficulties locating an Illinois attorney. (Mem. at 5.) Barsa also claims that "she did not learn of the judgment until she retained local counsel," and cannot be blamed for failing to contest the entry of a default judgment. (*Id*.) Barsa's arguments are without merit.

Courts in this district and the Seventh Circuit have held that plaintiffs could not establish "quick action"[4] where they failed to file a motion to vacate for three months, *Leadership Council for Metro. Open Communities, Inc. v. Quality Realty Inc.*, No. 98 C 7853, 1999 WL 1046431, at *4 (N.D. Ill. Nov. 10, 1999), two months, *Casio Computer Co.*, 35 Fed. Appx. at 250-51; *C.K.S. Engineers*, 726 F.2d at 1208; *Ried v. Swift Gift, Ltd.*, No. 04 C 6605, 2006 WL 398171, at *3-4 (N.D. Ill. Feb. 14, 2006); *Chandler Leasing Corp. v. UCC, Inc.*, 91 F.R.D. 81, 84 (N.D. Ill. 1981), six weeks, *Thomas v. Exxon Mobil Oil Corp.*, No. 07 C 0813, 2007 WL 2274710, at *3 (N.D. Ill. Aug. 1, 2007), five weeks, *Jones*, F.3d at 165, or even three weeks, *Sullivan v. Gen. Plumbing, Inc.*, No. 06 C 2464, 2007 WL 1030236, at *4 (N.D. Ill. Mar. 31, 2007), after entry of a default judgment. Although the default judgment was entered against Barsa on September 30, 2009, Barsa neglected to file a motion to vacate until January 19, 2010— more than *three and a half months* after entry of the default judgment. (*Compare* Order on Pl.'s Mot. for Default and Default J. Against Def. Barsa *with* Mot.) Barsa does not cite any case, nor can the court find any authority, in support of the proposition that such a long delay could ever qualify as "quick action." (*See* Mem.)

"The 'reasonableness' of a delay does vary between cases, but to be a reasonable delay [it] ought to have a good explanation." *Casio Computer Co.*, 35 Fed. Appx. at 251.

---

[4] "Because Rule 60(b) focuses on relief from *judgments*, the 'quick action' prong of the standard for vacating default judgments must concern itself with the time elapsing between entry of judgment and the motion to vacate." *Jones*, 39 F.3d at 165.

7

As set forth above, Barsa's health and family problems, and her difficulty finding a lawyer, do not qualify as "good explanations" for her delay. Barsa's tardiness in filing her motion to vacate is particularly inexcusable because Tygris claims to have sent Barsa a copy of the notice of motion and the motion for default, an assertion that is supported by the certificate of service.[5] (Resp. at 2; Notice of Mot. – Mot. for Default/Default J.) Further, Barsa's counsel waited an additional two months after entering his appearance before filing a motion to vacate the default judgment. (*Compare* Appearance *with* Mot.) However preoccupied Barsa may have been by her health and family issues, Barsa's counsel was free to, and should have, filed a motion to vacate the default shortly after entering an appearance. *See Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009). Because of the three and a half month delay between the entry of a default judgment and Barsa's motion to vacate, and in light of Barsa's failure to proffer any reasonable explanation for that delay, the court finds that Barsa has failed to satisfy the "quick action" prong of Rule 60(b).

**C.     Meritorious Defense**

Barsa suggests that the price Tygris accepted for the sale of the laser was too low, and that Barsa "should be allowed to explore the commercial reasonableness of the sale of the equipment by Tygris." (Reply at 4.) Tygris argues that the "commercial reasonableness" of the sale is irrelevant under the applicable section of the Uniform Commercial Code. (Resp. at 5-8.) "[E]ven if [Barsa] had a meritorious defense, her failure to demonstrate good cause for her default and quick action to rectify the default is sufficient to deny her motion to vacate the default judgment." *Jones*, 39 F.3d at 165; *see*

---

[5]     Barsa asserts that she "did not learn of the judgment until she retained local counsel," but nowhere does Barsa actually deny that she was aware of Tygris' motion. (*See* Mem. at 5.)

*also Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc*., 925 F.2d 226, 230 (7th Cir. 1991). ("[W]e need not pause long on the issue of a meritorious defense. Even if one exists, standing alone, it cannot excuse carelessness."). The court therefore declines to consider the whether the commercial reasonableness of Tygris' sale constitutes a "meritorious defense" under Rule 60(b).

## IV. CONCLUSION

For the foregoing reasons, Barsa's motion to vacate default judgment [Doc. No. 35] is denied. Pursuant to Tygris' request, the default judgment against Barsa [Doc. Nos. 25 and 26] is amended to reflect the application of the $21,500 in sale proceeds from the laser, for a final money judgment of $99,825.44.

ENTER: /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 21, 2010